UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  1:13-mc-22857-GRAHAM/GOODMAN

IN RE APPLICATION OF
Victor Mikhaylovich Pinchuk
Pursuant to 28 U.S.C. § 1782
For Judicial Assistance in
Obtaining Evidence in this District

_____/

**PINCHUK'S MEMORANDUM IN OPPOSITION
TO THE DISCOVERY SUBJECTS' MOTION TO VACATE [D.E. 41]**

Contrary to the Discovery Subjects' characterization of the LCIA Tribunal's ruling as overwhelmingly in favor of their position, it was anything but.  Igor Kolomoisky ("Kolomoisky") and Gennadiy Bogolyubov ("Bogolyubov") asked the LCIA Tribunal to order Pinchuk to suspend this § 1782 Application on the basis that it seeks inappropriate document and deposition discovery and that it subverts the LCIA Tribunal's control over the discovery process. They also asked the LCIA Tribunal to rule that the International Bar Association Rules on the Taking of Evidence in International Arbitration (the "IBA Rules") govern discovery in the London Arbitration.[1]  Not only did the LCIA Tribunal refuse to grant any of those requests, but it expressly conditioned its belief that it did not presently need to seek U.S. court assistance on the assurance by Kolomoisky's arbitration counsel that Kolomoisky can cause the documents requested to be produced in the London Arbitration.[2]  Moreover, the LCIA Tribunal did not rule that it would refuse to accept or review any evidence obtained from this § 1782 Application, a

---

[1] A copy of Kolomoisky's and Bogolyubov's requests to the LCIA Tribunal are attached as composite **Exhibit A**.

[2] Of course, counsel for Kolomoisky was unable to provide the Court with any type of confirmation regarding his control or authority to ensure the production of the documents.

ruling necessary to refute the presumption of a foreign tribunal's receptivity to § 1782 discovery.[3]

Indeed, by premising its order on Kolomoisky's promise that he can ensure production of the documents sought from the Discovery Subjects, by refusing to order Pinchuk to suspend his § 1782 Application, by refusing to halt the deposition of Mordechai Korf ("Korf"), and by leaving open the possibility that it may later need to seek this Court's assistance, the LCIA Tribunal evidenced that it *would* be receptive to the discovery sought.

Even assuming, *arguendo*, that the LCIA Tribunal's ruling favored the Discovery Subjects on the receptivity factor (it did not), the ruling has no bearing on the other three *Intel* factors, which undoubtedly support Pinchuk. First, the Discovery Subjects are not participants in the LCIA proceedings, so the LCIA Tribunal could never ensure that they have fully complied with any discovery orders. As highlighted in the *Mt. Hawley* case, Kolomoisky and Bogolyubov have historically been less than forthright in responding to discovery requests. Only this Court has the power to ensure the Discovery Subjects' compliance. Second, no LCIA rule prevents the discovery sought by Pinchuk. Interestingly, the LCIA Tribunal is fully aware of Pinchuk's discovery requests, including the request to depose Korf, but it refused to order Pinchuk to suspend his § 1782 application or the Korf deposition. Finally, Pinchuk's requests are not unduly intrusive or burdensome. The requests are tailored to elicit only the evidence that Pinchuk needs to support his claims in the London Arbitration, and Pinchuk has offered to work with the Discovery Subjects to alleviate any burden the discovery may impose. Thus, all three of the other *Intel* factors support Pinchuk's § 1782 Application as well.

---

[3] The LCIA Tribunal's order relates only to the "receptivity" factor, one of four discretionary considerations under 28 U.S.C. § 1782 discussed by the U.S. Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

**ARGUMENT**

**I.      ANY DOUBTS SHOULD BE RESOLVED IN FAVOR OF A § 1782 APPLICANT.**

Section 1782 provides a mechanism for both *litigants* and foreign tribunals to obtain assistance in securing evidence located in the United States for use in foreign proceedings. Contrary to opposing counsel's contention that § 1782 is intended only to assist foreign tribunals,[4] it is <u>equally intended to assist *litigants*</u>. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person [s]' who may invoke § 1782.").[5] Thus, whether the foreign tribunal itself makes the § 1782 application is not a relevant factor.

The relevant discretionary factors were articulated by the Supreme Court in *Intel*:

| | |
|---|---|
| First: | Whether the person from whom discovery is sought is a participant in the foreign proceeding. |
| Second: | The nature of the foreign tribunal, the character of the proceedings underway, and the receptivity of the tribunal to federal court assistance. |
| Third: | Whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions. |
| Fourth: | Whether the requests are unduly intrusive or burdensome. |

*Intel*, 542 U.S. at 264.

No single one of these factors is dispositive, and none should be given any greater weight than any other. *See Marubeni Am. Corp. v. LBA Y.K.*, 335 Fed. Appx. 95, 97 (2d Cir. 2009)

---

[4] Counsel for Kolomoisky and Bogolyubov claimed that assisting tribunals was § 1782's primary purpose in numerous instances and even claimed that it was §1782's *sole* purpose when questioned by the Court. *See* **Exhibit B**, Dec. 19, 2013 Tr. at 46:8, 62:11, 63:17 (primary purpose), 61:10 – 61:18 (sole purpose).

[5] *See also Application of Malev Hungarian Airlines*, 964 F.2d 97, 99-100 (2d Cir. 1992) (pointing to the statute's legislative history and noting that "the Chairman of the Commission explained its hope that enactment of the proposed legislation would provide efficient means of assistance in our federal courts for ***litigants*** involved in international litigation and would prompt foreign courts to follow our generous example and provide similar assistance to our court systems.") (emphasis added).

("Notably, the Court did not conclude that any of these factors should be given more weight than the others, and it did not hold that any one factor should be dispositive in a district court's analysis.").

At least one district court has noted that a § 1782 application should be granted unless the *Intel* factors *overwhelmingly* tip in favor of denying the application.  *See In re Chevron Corp.*, 753 F. Supp. 2d 536, 541 (D. Md. 2010) ("As Chevron meets all of the statutory factors under § 1782, and the *Intel* discretionary factors do not overwhelmingly tip in Respondents' favor, this court will GRANT Chevron's application to conduct discovery from Respondents Daniel Rourke and Carlos Picone.") (emphasis added).  In any event, **any doubts should be resolved in favor of granting the application**:

> [W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782. . . . . Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in "providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.
>
> \*       \*       \*
>
> [W]e think that it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright.

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100-01 (2d Cir. 1995); *see also In re Chevron Corp.*, 11-24599-CV, 2012 WL 3636925 (S.D. Fla. 2012) (noting that "District courts must exercise their discretion with an eye towards . . . providing efficient means of assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts" and that "[t]hese considerations counsel heavily in favor of generous federal court assistance."); In re Gushlak, No. 11-mc-218, 2011 WL 3651268,

at *4 (E.D.N.Y. 2011), *aff'd* 486 Fed. Appx. 215 (2d Cir. 2012) ("Indeed, courts should err on the side of ordering discovery, since foreign courts can easily disregard material they do not wish to consider.").

## II. THE LCIA TRIBUNAL'S RULING FAVORS PINCHUK'S APPLICATION.

### A. The LCIA Tribunal's Ruling Favors Pinchuk on the "Receptivity" Factor.

Despite Kolomoisky's and Bogolyubov's efforts, the LCIA Tribunal did not (1) order Pinchuk to suspend his applications to obtain documents and depositions under § 1782; (2) reject the documents or deposition sought by Pinchuk as irrelevant or outside the scope of the arbitration; or (3) indicate that it would not be receptive to the documents or deposition testimony if Pinchuk attempted to introduce them in the London Arbitration. The LCIA Tribunal's ruling does not support vacatur of this Court's September 20, 2013 order granting Pinchuk's § 1782 application [D.E. 5].

First, the relevant question is not whether a foreign tribunal needs U.S. court assistance or would order or permit the discovery, but whether it would be receptive to the evidence obtained by the applicant. In ruling on the receptivity factor, U.S. courts are in agreement that a foreign tribunal is *presumed* to be receptive of discovery unless there is some clear directive or authoritative proof that it would reject it.[6] This was well articulated by the United States District Court for the District of Columbia in *In re Veiga*:

---

[6] There was some debate at the December 19, 2013 hearing about whether the term "receptivity" contemplated receptivity to U.S. court assistance or receptivity to the evidence obtained. Counsel for Kolomoisky and Bogolyubov argued that it contemplates only the former *See* **Exhibit B**, Dec. 19, 2013 Tr. at 61:1 – 61:6, 64:15, 70:4 – 70:9. However, as the numerous cases cited in this section make clear, it contemplates both. *See, e.g., infra, In re Chevron Corp.*, 11-24599-CV, 2012 WL 3636925, *11-12 (S.D. Fla. 2012); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *In re Chevron Corp.*, 633 F.3d 153, 162-63 (3d Cir. 2011); *In re Chevron Corp.*, 7:10-MC-00067, 2010 WL 4883111 (W.D. Va. 2010); *In re Application of Repulic of Ecuador*, 2011 WL 10618727 (N.D. Fla. 2011).

5

> The party resisting discovery must point to "authoritative proof" that the foreign tribunal would reject the evidence sought.
>
> Section 1782(a) … <u>neither contemplates nor requires district courts to become embroiled in a "legal tug-of-war" over whether the foreign tribunal would be receptive to their assistance</u>. Where the relevance or admissibility of the evidence sought is sharply disputed, courts are free to rely on the <u>statute's overarching interest in providing fair and efficient assistance and the liberal standards of discovery in granting the application</u> and deferring to the foreign tribunal on contested issues. Absent a clear and unequivocal indication that the foreign tribunal would not be receptive to the evidence sought, this Court's role is a limited one….

*In re Veiga*, 746 F. Supp. 2d 8, 23-24 (D.D.C. 2010) (internal citations omitted and emphasis added). Numerous other federal courts, including in this District, have held the same. *See, e.g., In re Application of Winning (HK) Shipping Co, Ltd.*, 2010 WL 1796579, *10 (S.D. Fla. 2010) (finding that § 1782 discovery was authorized because, *inter alia*, "there has been no evidence or case law submitted that indicates that the foreign government or court would be unreceptive to United States federal-court judicial assistance").[7]

Although the LCIA Tribunal's ruling is not as informative as the Court would have hoped,[8] one thing is clear – it did not give any directive or authoritative statement that it would reject either the evidence sought here by Pinchuk or this Court's assistance. Rather, by

---

[7] All of the following cases are in agreement that a presumption arises in favor of receptivity that can be overcome only with proof that the foreign tribunal would reject the evidence or assistance. For the sake of brevity, the relevant quotations or explanatory parentheticals are omitted and instead included on a chart attached to this Memorandum as **Exhibit C**: *In re Chevron Corp.*, 11-24599-CV, 2012 WL 3636925, *11-12 (S.D. Fla. 2012); *In re Application of Inversiones y Gasolinera Petroleos Vanezuela, S. de R.L.*, 08-20378-MC, 2011 WL 181311, *13 (S.D. Fla. 2011); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *In re Chevron Corp.*, 633 F.3d at 162-63; *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 106 (D.D.C. 2010); *In re Chevron Corp.*, 2010 WL 4883111, *3; *The Government of Ghana v. Proenergy Services, LLC*, 2011 WL 2652755, *4 (W.D. Mo. 2011); *In re Kreke Immobilien KG*, 13mc110, 2013 WL 5966916, *5 (S.D.N.Y. 2013); *In re Gushlak*, 2011 WL 3651268, *4; *Ukrnafta v. Carpatsky Petroleum Corp.*, 3:09 MC 265 (JBA), 2009 WL 2877156 (D. Conn. 2009); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 272 (S.D.N.Y. 2004); *In re Republic of Ecuador*, 2:11-MC-00052 GSA, 2011 WL 4089189, *3 (E.D. Cal. 2011).

[8] *See* Exhibit B, Dec. 19, 2013 Hrg. Tr. at 40:14.

qualifying its statement about its need for assistance to the current time, and by conditioning it on a suspect assurance by Kolomoisky (through his counsel) to ensure production of the documents sought from the Discovery Subjects, the LCIA Tribunal left open the possibility that it may later need to seek this Court's assistance. In addition, by refusing to grant Kolomoisky's and Bogolyubov's requests to rule Pinchuk's § 1782 application impermissible or to order him to suspend this Application, the LCIA Tribunal further belied any argument that it would be unreceptive to any discovery obtained by Pinchuk. *See, e.g., In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 106 (D.D.C. 2010) (noting that the tribunal's refusal to order the § 1782 applicant to cease and desist from pursuing § 1782 discovery supported the conclusion that the tribunal was receptive to the discovery sought).[9]

The Discovery Subjects do not support the Motion to Vacate with any case law on the receptivity issue, but they previously cited (in their Motion to Stay) *Advanced Micro Devices, Inc. v. Intel Corp.*, 2004 WL 2282320 *2-3 (N.D. Cal. Oct. 4, 2004), and *In re Microsoft Corp.*, 2006 WL 1344091, *4 (D. Mass. Apr. 17, 2006), as examples of instances where a district court has denied a § 1782 application in light of the foreign tribunal's indication that it was unreceptive to the evidence. (D.E. 17 at 10.) Those cases are clearly distinguishable. In both cases, the foreign tribunal clearly stated that it did not want the evidence. For instance, in *Advanced Micro Devices,* the district court based its ruling on the foreign tribunal's express statement that it did not want the court's assistance, that it would never review the discovery

---

[9] The § 1782 application in *Caratube* was denied on other grounds, including the ground that a private international arbitration cannot satisfy the foreign tribunal requirement of § 1782. The notion that private arbitrations *per se* cannot satisfy § 1782's requirements, however, has been squarely rejected by the Eleventh Circuit Court of Appeals. *See In re Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 685 F.3d 987 (11th Cir. 2012).

obtained pursuant to the § 1782 application, and that granting the § 1782 request would jeopardize its interests.  2004 WL 2282320 at *2-3.

Similarly, in *Microsoft*, the district court was faced with a memorandum by the foreign tribunal that stated that "permitting the discovery requested by Microsoft would contravene principles of international comity since, in this case, the Commission is *not* receptive to the judicial assistance sought by Microsoft pursuant to 28 U.S.C. § 1782 and, indeed, believes that enforcement of Microsoft's subpoena would pose a serious risk that the Commission's rules and procedures concerning competition law enforcement would be circumvented."  2006 WL 1344091 at *2.  Unlike these cases, where the foreign tribunals clearly stated that they were not receptive to the evidence, the LCIA Tribunal has done no such thing.

During the December 19, 2013 hearing, counsel for Kolomoisky and Bogolyubov cited two additional cases to support their non-receptivity argument – *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 106 (D.D.C. 2010), and *In re Babcock Borsig AG*, 583 F. Supp. 2d 233 (D. Mass. 2008).  These cases do not help the Discovery Subjects.  First, as discussed above, *In re Caratube* actually supports Pinchuk on the issue of receptivity because it noted that the absence of authoritative proof that the tribunal would reject the discovery favored granting the application.  *See In re Caratube*, 730 F. Supp. 2d at 106.  The court nevertheless denied the application, but it did so based only on its view – which has been rejected by the Eleventh Circuit[10] – that § 1782 cannot, as a matter of law, be used when the foreign tribunal is a private arbitration body.  *Id.*

---

[10] *See supra* note 8, discussion of *In re Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 685 F.3d 987.

In *In re Babcock*, the court found the receptivity factor to be only neutral.  However, based on the unique circumstances of the case, including "the apparent bad blood among these parties, coupled with the fact that [the applicant] has not taken any formal steps toward initiating arbitration in the ICC after allegedly discovering Hitachi's misconduct almost two years ago," the court felt that it was best to wait for an indication from the foreign tribunal that it was receptive to the documents.  *In re Babcock Borsig AG*, 583 F. Supp. 2d 233 at 242.  The factors affecting the court's decision in *In re Babcock* are not present here.

In this case, the LCIA Tribunal has not only not given a clear directive that it would be unreceptive to the evidence, but it has conditioned its ruling on the requested discovery actually being provided to it by one of the Respondents in the London Arbitration, as counsel for Kolomoisky assured the LCIA Tribunal.  Accordingly, the Court cannot find that the LCIA Tribunal would ultimately be unreceptive to either the evidence or this Court's assistance.

**B.      The Other Three *Intel* Factors Also Favor Pinchuk.**

*1.  The Discovery Subjects Are Not Participants in the Foreign Proceeding.*

The fact that the party from whom discovery is sought is not a participant in the foreign proceedings weighs in favor of authorizing § 1782 discovery.  The Supreme Court explained the reason in *Intel*:

> [N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel Corp.*, 542 U.S. at 264.  Here, despite Kolomoisky's questionable assurance to the LCIA Tribunal[11] that he controls the subject documents and will produce them when the time comes,

---

[11] Even at the December 19, 2013 hearing, Kolomoisky's counsel could not give adequate assurances that Kolomoisky has the necessary control over the documents.  *See* Exhibit B, Dec. 19, 2013 Hrg. Tr. at 81:23 – 81:25, 124:3 – 124:20, and 126:12 – 126:17.

9

the LCIA Tribunal will never have the power to ensure that the Discovery Subjects comply with their discovery obligations in compliance with this Court's order of September 20, 2013 [D.E. 5]. The LCIA Tribunal will have to take Kolomoisky at his word that everything ordered has, in fact, been produced, but it does not have the power to verify those representations by Kolomoisky. Only this court has the jurisdiction to compel disclosure. Only this Court has the authority to require the Discovery Subjects to testify about the existence and location of documents. Only this Court has the power to require the Discovery Subjects to confirm their compliance. And only this Court has the contempt power to ensure compliance. Given Kolomoisky's history of being less than forthright when it comes to responding to discovery and his prior denials of having control over certain of the Discovery Subjects,[12] this factor weighs heavily in favor of granting Pinchuk's application.

### 2. Pinchuk's Application Does Not Conceal an Attempt to Circumvent Any LCIA Proof-Gathering Restrictions.

Just like the receptivity factor, the burden is on an opponent § 1782 discovery to demonstrate that the applicant is attempting to circumvent the foreign tribunal's proof-gathering restrictions. To so do, the opponent must point to express rules or a specific ruling that prohibits the discovery sought. In the absence of such evidence, a district court should find in favor of the applicant. *See In re Chevron Corp.*, 633 F.3d at 163 ("Without a definitive determination that the Lago Agrio Court has denied Chevron access to the same documents that Chevron seeks in its section 1782 discovery application, an issue on which appellants bear the burden of proof as the parties opposing discovery, it cannot be said that Chevron's section 1782 application is 'an attempt to circumvent foreign proof-gathering restrictions.'"); *In re Veiga*, 746 F. Supp. 2d at 25

---

[12] *See generally Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 269 F.R.D. 609 (S.D.W. Va. 2010); *see also* excerpts from the October 2012 ITC Investigation Report, D.E. 30, Exhibit B at 8-9, 45-49.

10

("There is no evidence in the record—none—that would lead this Court to believe that Applicants have sought to circumvent the proof-gathering procedures or policies of the foreign tribunals…."); *In re Application of Inversiones*, 2011 WL 181311, at *12-13 (finding for the applicant on the circumvention factor where there was no evidence provided regarding any proof-gathering restrictions).

In the Motion to Vacate [D.E. 41], the Discovery Subjects point to no specific rule or restriction that prevents Pinchuk from maintaining his § 1782 Application. Instead, their sole argument is that Pinchuk has *per se* circumvented the LCIA Tribunal's proof-gathering restrictions because he did not first attempt to obtain the discovery from the LCIA Tribunal. (D.E. 41 at 4.) The courts have expressly rejected this argument and confirmed that a § 1782 applicant has no such obligation. *See, e.g., In re Gushlak*, 2011 WL 3651268 at *5 ("[T]he possibility that the Grand Court will rule on discovery requests similar to the ones at issue here does not weigh against granting Petitioner's application. Again, a § 1782 applicant need not exhaust foreign discovery remedies. Requiring Petitioner to wait for the outcome of the Grand Court's discovery proceedings would amount to enforcing such an 'exhaustion' requirement."); *In re Veiga*, 746 F. Supp. 2d at 24 ("First, the assertion that Applicants have not previously attempted to obtain comparable discovery in Ecuador or before the BIT Arbitration Panel, even if true, is simply irrelevant to this Court's analysis. Section 1782(a) does not incorporate an exhaustion requirement, and an applicant is not required to first seek discovery from the foreign tribunal.").

When pressed by the Court at the December 19, 2013 hearing for some specific restriction that Pinchuk's application was allegedly violating, the Discovery Subjects pointed only to Rule 22.2 of the LCIA Rules:

> By agreeing to arbitration under these Rules, the parties shall be treated as having agreed not to apply to any state court or other judicial authority for any order available from the Arbitral Tribunal under Article 22.1, except with the agreement in writing of all parties.

*See* Dec. 19, 2013 Hrg. Tr. at 97, a copy of which is attached as **Exhibit B**. However, Pinchuk's § 1782 Application does not violate or seek to circumvent this LCIA Rule because it does not seek any order that is available from the LCIA Tribunal. Specifically, Pinchuk seeks to have (and this Court has ordered) U.S. entities and an individual that are non-parties in the London Arbitration provide relevant discovery, but, as the Court correctly suggested during the December 19, 2013 hearing, the LCIA Tribunal has no ability to order such U.S. non-parties to produce discovery. *See* Exhibit B, Dec. 19, 2013 Hrg. Tr. at 98, 48:22. Thus, Pinchuk's § 1782 Application does not violate Rule 22.2 of the LCIA Rules.

Moreover, opposing counsel conceded during the December 19, 2013 hearing that the LCIA rules do not prohibit depositions. *See* Dec. 19, 2012 Hearing Transcript, 98:16 – 98:18 ("Court: Could Mr. Pinchuk get a deposition from the arbitral tribunal?   Mr. Mullins: In theory he could….").[13] Thus, Pinchuk's attempt to take Korf's deposition does not violate any of the LCIA Tribunal's proof-gathering restrictions.

The Discovery Subjects also incorrectly argue in their Motion to Vacate that "Pinchuk's attempts to obtain depositions and extensive immediate document discovery were rebuffed by the Tribunal." (D.E. 41 at 4.) It is simply not true. As discussed, although Kolomoisky and Bogolyubov asked the LCIA Tribunal to order Pinchuk to suspend his attempts to obtain documents and take Korf's deposition based, in part, on an argument that he was subverting the

---

[13] Opposing counsel also attempted to persuade the Court that the Korf deposition is unnecessary because Pinchuk would have an opportunity to examine him in the LCIA proceedings. When the Court asked who would compel Korf to appear before the LCIA Tribunal, opposing counsel could only express his "belief" that Korf would appear in the LCIA. *See* Exhibit B, Dec. 19, 2013 Tr. at 99:17 – 99:20.

12

LCIA Tribunal's control over the discovery process, the Tribunal expressly refused to enter such an order and indicated that it may, itself, need to later seek this Court's assistance to obtain the subject discovery. Thus, the LCIA Tribunal's ruling supports Pinchuk on the circumvention factor.

### 3. *Pinchuk's Application Does Not Seek Discovery That is Unduly Intrusive or Burdensome*.

In *Intel*, the Supreme Court noted that, in exercising its discretion under § 1782, a district court may also consider whether the discovery requested is unduly intrusive or burdensome. *See Intel Corp.*, 542 U.S. at 265. As Pinchuk demonstrated in his Memorandum in Opposition to the Discovery Subjects' Motion to Quash [D.E. 30], his requests are narrowly tailored to obtain only the evidence that he needs for the foreign proceedings, and he has attempted to work with the Discovery Subjects to allay any burdens that production may cause them and has offered to enter into a confidentiality stipulation. Thus, this factor also weighs in Pinchuk's favor. But, even if the Court found that some of Pinchuk's requests were burdensome, as the *Intel* court observed, the proper remedy would not be to deny the application altogether, but to reject or trim those specific requests. *Id.*

## CONCLUSION

Pinchuk has demonstrated a clear entitlement to § 1782 relief, and the LCIA Tribunal's ruling does nothing to invalidate it. The LCIA Tribunal's ruling did not declare, as Kolomoisky and Bogolyubov had requested, that Pinchuk is seeking discovery that is outside the scope of the arbitration. It did not say that the LCIA Tribunal would reject the evidence that Pinchuk seeks to obtain. And it did not say that Pinchuk's Application violates the LCIA's rules or procedures. All that the LCIA Tribunal said is that it does not *presently* need this Court's assistance because Kolomoisky made assurances that he controls the documents sought from the Discovery Subjects

and can produce them later in the London Arbitration. But making Pinchuk wait to see whether that happens is tantamount to enforcing an exhaustion requirement that does not exist under § 1782.[14] More importantly, because only this Court has the power to ensure that the Discovery Subjects have complied with their discovery obligations, vacating the application leaves Pinchuk with no way of ensuring that he will be able to obtain the documents and testimony that he needs to prosecute his claims in the London Arbitration. For these and all of the foregoing reasons, including the fact that any doubts should be resolved in favor of authorizing § 1782 discovery, the Motion to Vacate should be denied.

Respectfully submitted,

s/ Ryan C. Zagare
Richard H. Critchlow (FL Bar No. 155227)
rcritchlow@knpa.com
Elizabeth B. Honkonen (FL Bar No. 0149403)
ehonkonen@knpa.com
Ryan C. Zagare (FL Bar No. 28700)
rzagare@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

*Counsel for Applicant Victor Mikhaylovich Pinchuk*

---

[14] *See In re Gushlak*, 2011 WL 3651268 at *5 ("[T]he possibility that the Grand Court will rule on discovery requests similar to the ones at issue here does not weigh against granting. Requiring Petitioner to wait for the outcome of the Grand Court's discovery proceedings would amount to enforcing such an "exhaustion" requirement.").

**CERTIFICATE OF SERVICE**

**I certify** that on January 6, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Ryan C. Zagare

**SERVICE LIST**

*IN RE APPLICATION OF Victor Mikhaylovich Pinchuk*
*CASE NO.  1:13-mc-22857-GRAHAM/GOODMAN*

| | |
|---|---|
| Jeffrey B. Crockett, Esq.<br>jcrockett@coffeyburlington.com<br>Armando Rosquete, Esq.<br>Arosquete@coffeyburlington.com<br>Benjamin Brodsky, Esq.<br>bbrodsky@coffeyburlington.com<br>COFFEY BURLINGTON, P.L.<br>2699 South Bayshore Drive, PH<br>Miami, Florida  33131<br>Telephone:     (305) 858-2900<br>Facsimile:     (305) 858-5261<br>*Counsel for Discovery Subjects*<br>**[VIA CM/ECF]** | Jose I. Astigarraga, Esq.<br>jastigarraga@astidavis.com<br>Edward M. Mullins, Esq.<br>emullins@astidavis.com<br>Arnoldo B. Lacayo, Esq.<br>alacayo@astidavis.com<br>ASTIGARRAGA DAVIS MULLINS<br> & GROSSMAN, P.A.<br>701 Brickell Avenue, 16th Floor<br>Miami, Florida  33131<br>Telephone:     (305) 372-8282<br>Facsimile:     (305) 372-8202<br>*Counsel for Proposed Intervenors*<br>**[VIA CM/ECF]** |

Richard H. Critchlow (FL Bar No. 155227)
rcritchlow@knpa.com
Elizabeth B. Honkonen (FL Bar No. 0149403)
ehonkonen@knpa.com
Ryan Zagare (FL Bar No. 28700)
rzagare@knpa.com
Victoria J. Shanstrom (FL Bar No. 0092157)
vshanstrom@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, Florida  33131-4327
Telephone:     (305) 373-1000
Facsimile:     (305) 372-1861
*Counsel for Applicant Victor Mikhaylovich Pinchuk*
**[VIA CM/ECF]**