UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:13-22857-MC-GOODMAN

IN RE: APPLICATION OF VICTOR
MIKHAYLOVICH PINCHUK FOR
JUDICIAL ASSISTANCE IN
OBTAINING EVIDENCE IN THIS
DISTRICT
_____

**DISCOVERY SUBJECTS' REPLY IN SUPPORT OF THEIR MOTION TO
VACATE DISCOVERY ASPECTS OF COURT ORDER ON SECTION 1782
APPLICATION [DE 41]**

Felman Production, LLC ("FP"), Felman Trading, Inc. ("FT"), CC Metals and Alloys,

LLC ("CCMA"), Georgian American Alloys, Inc. ("GAA") ("Corporate Discovery Subjects")

and Mordechai Korf ("Mr. Korf") (collectively the "Discovery Subjects"), respectfully submit

this Reply in Support of their Motion to Vacate Discovery Aspects of this Court's Order [DE

41] dated September 20, 2013, [DE 17].

**PRELIMINARY STATEMENT**

The LCIA Tribunal has informed this Court that "it does not presently need to seek the

assistance of the U.S. Courts for the purposes of this arbitration." [DE 40 (Notice of Filing Dec.

18, 2013 LCIA Ruling)].  Moreover, as noted by Messrs. Kolomoisky and Bogolyubov in their

recently-filed Notice of Filing [DE 54], the LCIA Tribunal has also indicated its full willingness

to address any enquiries this Court may make concerning this Section 1782 proceeding—except

that it cannot, because ***Mr. Pinchuk*** has not appointed counsel in that LCIA arbitration.  In the

Tribunal's exact words:

> The Tribunal records its concern that its ability to proceed with the arbitration
> and, specifically, to be responsive to enquiries emanating from the Southern
> District Court in Florida, ***arises solely out of an absence of assistance from***

> ***Counsel of Record for [Pinchuk] in the arbitration . . . Yet [Pinchuk] pursues his Section 1782 application before the Florida Court. . . .***
>
> It is not for the Tribunal to issue directions as to the conduct of any proceedings other than those of which it is seised and it would not presume to do so. However, the Tribunal suggests that it would be regrettable, if any decision were taken in proceedings in another jurisdiction intended to be in support of the arbitral process at a time when the Tribunal is unable to act by reason of Claimant's continuing lack of representation in the arbitration.

[DE 54 at 1-2 (emphasis added)].  In addition, it is plainly the case that Mr. Pinchuk could have access to the same discovery in the LCIA arbitration, because the documents will be produced ***if the Tribunal so orders*** and Mr. Korf will be a witness in the arbitration.  (Dec. 19, 2013 Hrg. Tr. at 53:2-5; 89:13-14; 99-100).

In light of the LCIA Tribunal's rulings, and the fact that Mr. Pinchuk could obtain the discovery he seeks from that tribunal in any event, it is untenable for him to continue to request that this Court provide Section 1782 relief, because that request disregards comity, which is especially grievous because Mr. Pinchuk *initiated* arbitral proceedings and was made without any leave from the Tribunal, in contravention of accepted practice in circumstances such as these. The Court should reject Mr. Pinchuk's position and vacate the discovery aspects of its September 20, 2013, Order.  Requiring the Discovery Subjects to produce the information under these circumstances does not effectuate Section 1782's purpose.

### A. REGARDLESS OF HOW ONE ARTICULATES THE GOALS OF SECTION 1782, THOSE GOALS ARE NOT FURTHERED BY IGNORING THE LCIA TRIBUNAL'S GUIDANCE IN THIS SPECIFIC CASE.

During the recent December 19, 2013, hearing on the various motions pending before the Court, time was spent discussing whether the true purposes of Section 1782 is to assist foreign tribunals or foreign litigants.  Certainly, the Congressional record contains a statement that the bill provides benefits for "tribunals and litigants" (and, indeed, litigants do "benefit" from the statute in some sense), but the text of the statute itself makes plain that its primary purpose is to

provide evidence "for use" in a "foreign or international tribunal."[1]  The Eleventh Circuit has similarly explained, therefore, that "the purpose of Section 1782 is to liberalize the assistance *given to foreign and international tribunals*."  *In re Clerici*, 481 F.3d 1324, 1333 (11th Cir. 2007) (internal citations omitted) (emphasis added). The consequence is that the appropriateness of Section 1782 is best ascertained by asking whether the material sought would "assist" the "foreign tribunal" in *this* case.  The answer to that question is undoubtedly informed by the tribunal's receptivity to the information sought and the fact that the tribunal is an arbitral body.

## B.  PINCHUK'S CREATIVE INTERPRETATION OF THE LCIA TRIBUNAL'S ORDER MUST FAIL.

In assessing the "receptivity" prong of the discretionary analysis, the district court in *In re Babcock*, 583 F. Supp. 2d 233, 241 (D. Mass. 2013), described it as "particularly important in light of the purposes of §1782(a)" and cited to *Intel* where the Supreme Court explained, that "the primary purpose of the statute is 'to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws.'"  *Id.* (citing *Intel*, 542 U.S. at 264).  It should go without saying that any litigant, especially those who affirmatively elect to submit to the jurisdiction of an arbitral body, as Mr. Pinchuk has done, must accept that his own agenda cannot trump the tribunal's own case management and decision-making powers. *See, e.g.*, *In re Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 107 (party seeking § 1782 discovery without

---

[1]    A Senate Judiciary Committee report supporting the 1964 amendment to the statute, for example, expressed the goal of "providing equitable and efficacious procedures for the benefit of *tribunals and litigants* involved in litigation with international aspects," and thereby "invit[ing] foreign countries similarly to adjust their procedures." S. Rep. No. 1580, at 2 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3783 (emphasis added).  This language from the Senate Report has been cited in various cases.  *See, e.g., Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998).

authorization of arbitral tribunal "is using section 1782 in an attempt to circumvent the Tribunal's control over the arbitration's procedures").

The Tribunal has stated forthrightly that "it does not presently need to seek the [Section 1782] assistance of the U.S. Courts for the purposes of this arbitration." [DE 40].  No amount of assiduous parsing of the LCIA's order can overcome the common-sense and obvious conclusion that allowing the discovery would not serve Section 1782 purposes.  *First*, in so far as Section 1782 is aimed at assisting the Tribunal itself to obtain information that it might not otherwise obtain, that is not a concern because the Tribunal will be able to order production of the requested documents from Messrs. Kolomoisky and Bogolyubov and those documents will be produced in a manner consistent with that order.[2]  *Second*, in so far as the discovery is meant to aid litigants, this too is achieved here because there is no dispute that the materials and testimony will be available to Mr. Pinchuk and the Tribunal. *Third*, because the Tribunal has stated that it does not require assistance, the denial of Section 1782 discovery will not undermine the statute's aim of encouraging reciprocity of "equitable and efficacious" discovery procedures to our courts.

Related to these considerations is the Supreme Court's observation that "comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases . . ." *Intel*, 542 U.S. 261.  Comity is traditionally understood and generally defined as respect for, and sensitivity to, the extra-territorial implications of judicial decision-making.[3]  It does not serve principles of comity for this Court to render assistance to a foreign

---

[2]    *See also* DE 50-3 at 12-13 (Copy of Information Sharing Agreement between Mr. Kolomoiskiy and Discovery Subjects).

[3]    *See Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1519 n.10 (11th Cir. 1994) ("[C]omity has been defined in various places as the basis of international law, a rule of

tribunal which has deliberately stated that it has need for that assistance.  Indeed, it would be in

tension with those principles.

## C. UNDER THE SPECIFIC FACTS OF THIS CASE PROVIDING THE DISCOVERY WOULD UNDERMINE ARBITRATION AND REWARD MR. PINCHUK'S GAMESMANSHIP.

The fact that the "foreign tribunal" is a private arbitral body also merits consideration and

cannot be ignored.   The Eleventh Circuit has made it clear that the basic character of

arbitration—as a cost-efficient dispute resolution alternative—is a factor that courts should

consider in Section 1782 proceedings that involve international arbitral proceedings. *See In re*

*Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc*., 685 F.3d

987, 998 n.7 (11th Cir. 2012) (stating that "application of section 1782 to private arbitration is at

odds with the limited scope of discovery and streamlined procedures that lead parties to elect to

pursue arbitration in the first place" and that "arbitration's principal advantages may be

destroyed if the parties succumb to fighting over burdensome discovery requests far from the

place of arbitration");[4] *see also Caratube,* 730 F. Supp. 2d 107-08 (denying Section 1782 relief

---

international law, a synonym for private international law, a rule of choice of law, courtesy, politeness, convenience or goodwill between sovereigns, a moral necessity, expediency, reciprocity or consideration of high international politics concerned with maintaining amicable and workable relationships between nations" and noting that international comity "may be applicable whenever a court's decision will have ramifications beyond its territorial jurisdiction and into that of another nation") (internal quotations and citations omitted).

[4]    In a recent opinion issued January 10, 2014, the Eleventh Circuit *sua sponte* vacated its prior holding that, as a threshold matter, private arbitral tribunals could be considered "foreign or international tribunals" for purposes of Section 1782.  *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.,* --- F.3d ---, 2014 WL 104132, at *5, n.4 (11th Cir. Jan 10, 2014) (No. 11-12897) (publication pending) (stating it was declining "to answer the substantial question" because "the district court made no factual findings about the arbitration and made no effort to determine whether the arbitration proceeding in Ecuador amounted to a section 1782 tribunal" but noting "dicta" in *Intel* that "the term 'tribunal' . . . includes arbitral tribunals.") (internal citations and quotations omitted).  The Court's opinion allowed Section 1782 discovery only on the basis of a foreign court proceeding, and declined to determine whether or not private commercial arbitrations satisfy the requirements of Section

because party in arbitration was seeking to avoid tribunal's power over discovery); *In re Hanwha Azdel, Inc.*, __ F. Supp. 2d __, 2013 WL 5816549, at *2 (D. Mass. Oct. 29, 2013) (publication pending) (denying Section 1782 discovery in aid of an ICC arbitration venued in Virginia and reasoning: "Applicants' effort to obtain discovery appear to be an attempt to 'circumvent foreign proof-gathering procedures.' Put differently, the arbitration proceeding itself offers the possibility of discovery, under the supervision of the arbitrators.")

Indeed, even when advocating that Section 1782 be extended to private arbitral tribunals, Professor Hans Smit—the "dominant drafter" and "architect" of the 1964 revision to Section 1782[5]—also explained why it was not the case that "assistance to international arbitral tribunals should be provided in the same circumstances in which it is extended to foreign courts." In Professor Smit's words:

> **The purpose of Section 1782 is to provide liberal assistance to foreign and international tribunals, but this assistance should not be provided when it**

---

1782. District Courts in this Circuit have split on the same issue (*compare In re Operadora DB Mexico, S.A. de C.V.*, No. 6:09-cv-383-Orl-22GJK, 2009 WL 2423138, at *12 (M.D. Fla. Aug 4, 2009 ("ICC Panel" is not "a foreign or international tribunal") *with In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1228 (N.D. Ga. 2006) (arbitration in Vienna can support Section 1782 application))--but regardless of whether this Court considers the question one of a threshold or discretionary matter, the facts here, with a clear ruling from the LCIA Tribunal that it does not require assistance, mandate a denial of Section 1782 discovery.

[5]   The Eleventh Circuit noted in *In re Consorcio Ecuatoriano de Telecomunicaciones S.A.*:

> Professor Smit, whose articles are repeatedly cited by the Supreme Court in *Intel*, is more than a leading scholar in the field. Indeed, one of the reasons offered for citing his views as persuasive authority on the interpretation of section 1782 is that, as then-Judge Ginsburg explained in an earlier D.C. Circuit opinion, Professor Smit is "the dominant drafter of, and commentator on, the 1964 revision of 28 U.S.C. § 1782."

685 F.3d at 994 n.4 (citing and quoting to *In re Letter of Request from Crown Prosecution Service*, 870 F.2d 686, 689 (D.C. Cir.1989) (R.B. Ginsburg, J.)); *see also Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir.1995) (describing Professor Smit as a "chief architect" of § 1782).

*would interfere with the orderly processes of the foreign or international tribunal.* . . . The American court should refrain from passing on questions of foreign law when these can quite properly be left to the foreign or international tribunal which is necessarily the ultimate judge of whether the evidence can properly be used in its own forum. . . .

*These considerations <u>do not</u> apply with the same force to international arbitral tribunals. One of the great advantages of arbitration is that it leaves a great deal of freedom to the tribunal and the litigants to tailor the procedure to the needs of the particular case.* This procedure will normally not be known before the tribunal and the litigants have had an opportunity to lay down the particular procedure they wish to be followed. The parties can therefore not make any judgment as to whether recourse to Section 1782 would be compatible with the tribunal's procedure. *And once the tribunal has determined what procedure is to be followed, the parties can easily address the tribunal with the request that it approve of a proposed application under Section 1782.* ***Accordingly, the rule in relation to international arbitral tribunals should be that American courts should honor an application under Section 1782 only if the application is approved by the arbitral tribunal***.

Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 8-9 (1998) (emphasis added).  Professor Smit's reasoning has not been relegated to academic corners and is reflected in the International Bar Association's Rules on the Taking of Evidence in International Arbitration ("IBA Rules"). The same position was also adopted by the New York City Bar, with advised that "best practice[]" would be that Section 1782 discovery in aid of arbitration should only be provided "if the request comes from the arbitrators or with the consent of the arbitrators."[6]

As previously described to this Court, the arbitral tribunal's authority over discovery matters—including a requirement that parties seek leave of the arbitrators before pursuing third party evidence through a judicial process—is not only supported by Florida, United States and

---

[6]   N.Y.C. Bar, Comm. on Int'l Commercial Disps., 28 U.S.C. § 1782 As a Means of Obtaining Discovery in Aid of International Commercial Arbitration – Applicability and Best Practices, at 1.

English law [DE 17 at 10 (Discovery Subjects' Motion to Stay)], but is also the position adopted by the LCIA Rules and Article 3(9) of the IBA Rules.  Both parties admit that these set of rules will likely govern the LCIA arbitration.[7]  For example, the IBA Rules state:

> *If a Party wishes to obtain the production of Documents from a person or organisation who is not a Party to the arbitration* and from whom the Party cannot obtain the Documents on its own, *the Party may, within the time ordered by the Arbitral Tribunal, ask it to take whatever steps are legally available to obtain the requested Documents, or seek leave from the Arbitral Tribunal to take such steps itself. . . . The Arbitral Tribunal shall decide on this request* and shall take, authorize the requesting Party to take, or order any other Party to take, such steps as the Arbitral Tribunal considers appropriate ….

IBA Rules, Art. 3(9) (emphasis added).  Similarly, Article 22.2 of the LCIA Rules provides that, "by agreeing to arbitration under these Rules, the parties shall be treated as having agreed not to apply to any state court or other judicial authority for any order available from the Arbitral Tribunal under Article 22.1, except with the agreement in writing of all parties."  [DE 1-4 at 11].  Among the orders available from the Tribunal under Article 22.1 is an order "to decide whether or not to apply any strict rules of evidence (or any other rules) as to the admissibility, relevance or weight of any material tendered by a party on any matter of fact or expert opinion; ***and to determine the time, manner and form in which such material should be exchanged between the parties and presented to the Arbitral Tribunal***." LCIA Rules, Art. 22.1(f) (emphasis added).[8]

Here, Mr. Pinchuk did not seek the LCIA Tribunal's approval before seeking Section

---

[7] Mr. Pinchuk's own expert, Mr. Matthews, concedes that it is "commonplace" for LCIA tribunals "to adopt Article 3 of the International Bar Association Rules on the Taking of Evidence in International Arbitration." [DE 25-1 at 4, ¶ 11; *see also* DE 29 (Heilbron Decl.) at 11, ¶41].

[8] This arbitration clause provides that the parties will submit disputes arising under the Agreement to "the exclusive jurisdiction of the London International Commercial Arbitration [sic] . . . [to] be heard in accordance with its rules." (Rubins Decl. ¶8).

1782 relief—and, indeed, the Tribunal later held that this Court's assistance was not necessary. This, in itself, defeats Mr. Pinchuk's application.  *See, e.g.*, *Caratube*,  730 F. Supp. 2d 107-8 (party cannot evade tribunal's control of discovery in the IBA Rules by bringing Section 1782 petition).[9] Finally, wholly apart from the factors that govern discovery here, there is no room in the LCIA framework or IBA Rules for pre-hearing, U.S.-style depositions, which instead provide for formal statements followed by the right to cross-examine witnesses, under the direction and control of the tribunal.  [DE 29, at 19, ¶73 (Heilbron Decl.)].

## V.  CONCLUSION

Based on the foregoing, the Discovery Subjects respectfully request that their Motion to Vacate the Discovery Aspects of this Court's September 20, 2013 Order be granted.  The LCIA Tribunal has spoken and it does not want the assistance of the American courts at this time.  By any objective measure this is sufficient guidance and dictates denial of Mr Pinchuk's entire application.  Further, as set forth herein, and as evidenced by various filings before the Court, steps have been taken to make the information sought by Mr. Pinchuk available in the arbitration, if that is what the LCIA Tribunal so orders.  Under such circumstances, vacating the September 20, 2013 would be a sound and wise exercise of this Court's discretion.

Respectfully submitted,

By:___/s/ *Armando Rosquete*_____
COFFEY BURLINGTON, P.L.
Armando Rosquete, Esq.
arosquete@coffeyburlington.com
Florida Bar No. 648434
Jeffrey B. Crockett, Esq.
jcrockett@coffeyburlington.com

---

[9] This arbitration clause provides that the parties will submit disputes arising under the Agreement to "the exclusive jurisdiction of the London International Commercial Arbitration [sic] . . . [to] be heard in accordance with its rules." (Rubins Decl. ¶8).

CASE NO.: 1:13-22857-MC-JG

Florida Bar No. 347401
Benjamin Brodsky, Esq.
bbrodsky@coffeyburlington.com
Florida Bar No. 073748
2699 South Bayshore Drive, PH
Miami, Florida 33133
Telephone:   (305) 858-2900
Facsimile:    (305) 858-5261

*Attorneys for Discovery Subjects, Felman*
*Production, LLC, Felman Trading, Inc., CC*
*Metals and Alloys, LLC, Georgian American*
*Alloys, Inc., and Mordechai Korf*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served via electronic notice by the CM/ECF system, this <u>20th</u> day of <u>January</u>, <u>2014</u>, on all counsel or parties of record on the Service List below.

*/s/ Armando Rosquete*
Armando Rosquete

CASE NO.: 1:13-22857-MC-JG

## SERVICE LIST

## IN RE: APPLICATION OF VICTOR MIKHAYLOVICH PINCHUK FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE IN THIS DISTRICT

**Case No.: 13-22857-GOODMAN**

**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| Richard H. Critchlow, Esq.<br>Elizabeth Brooks Honkonen, Esq.<br>Jalaine Garcia, Esq.<br>KENNY NACHWALTER, P.A.<br>201 S. Biscayne Boulevard<br>Miami Center- Suite 1100<br>Miami, Florida 33131-4237<br>305-373-1000<br>rcritchlow@kennynachwalter.com<br>ebh@kennynachwalter.com<br>jgarcia@kennynachwalter.com<br><br>*Attorneys for Victor Mikhaylovich Pinchuk* | José I. Astigarraga, Esq.<br>Edward M. Mullins, Esq.<br>Arnoldo B. Lacayo, Esq.<br>ASTIGARRAGA DAVIS MULLINS &<br>GROSSMAN, P.A.<br>701 Brickell Avenue, 16th Floor<br>Miami, Florida 33131<br>Tel: (305) 372-8282<br>Fax: (305) 372-8202<br>jastigarraga@astidavis.com<br>emullins@astidavis.com<br>alacayo@astidavis.com<br><br>*Attorneys for Proposed Intervenors Igor*<br>*Kolomoisky and Gennadiy Bogolyubov* |