**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 13-MC-22857-GRAHAM/GOODMAN**

IN RE APPLICATION OF
Victor Mikhaylovich Pinchuk
Pursuant to 28 U.S.C. § 1782
For Judicial Assistance in
Obtaining Evidence in this District
_______________________________/

**APPLICANT'S RESPONSE TO**
**INTERVENORS' DECLARATIONS REGARDING CONTROL**

This is *Mt. Hawley* all over again. Only it's more troubling.[1] There, at least Igor Kolomoisky ("K") and Gennadiy Bogolyubov ("B") were consistent in their denials about their ownership and control over Felman Production. Not so in this case. **First**, in their Motion to Intervene Reply Brief, they implied that they *do not* own or control the Discovery Subjects. **Then**, on December 16, 2013, by "***assuring***" the LCIA Tribunal that the subject documents are "***under his control***" and that he can "***ensure their production***," K implied that he *does* own and/or control the Discovery Subjects. **Next**, when asked by this Court during the December 19, 2013 hearing how K was able to make those assurances, counsel for the Discovery Subjects confirmed what K had implied through his representations to the LCIA Tribunal – that K & B have the ***majority beneficial ownership*** of the Discovery Subjects.

But now that the LCIA Tribunal has made a ruling in reliance on their representations, K and B are changing the story, again. **Now**, they are back to disclaiming majority ownership or control over the Discovery Subjects. In their crafty declarations, K and B each claim that they do not, individually, have a majority ownership interest in the Discovery

[1] *See* Post-Hearing Order Regarding Factual Clarification for Intervention Motion, ECF 46 at 4-5 (referencing the *Mt. Hawley* court's findings that Felman Production's representations regarding K's and B's relationship to Felman Production were "troubling.") (citing *Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 269 F.R.D. 609, 617 (S.D. W. Va. 2010)).

Subjects.[2] They claim that their representations to the LCIA Tribunal and to this Court were based solely on a verbal "agreement" by the Discovery Subjects to produce the documents, a verbal agreement that purportedly existed before the December 16, 2013 LCIA hearing but which was not committed to writing until January 9, 2014. Interestingly, despite being asked during the December 19, 2013 hearing how K "controlled" and could "ensure the production" of the documents, counsel for K and the Discovery Subjects never once explained that K's control was based exclusively on an agreement with the Discovery Subjects. That surprising claim[3] was made for the very first time in K's declaration. *See* ECF 50-3.

It took two years for the *Mt. Hawley* court to fully uncover and comprehend the enormous breadth of the discovery subterfuge perpetrated by Felman Production and its leadership (including K and B). *See* Pinchuk's Notice of Filing Supp. Auth., ECF 55 (the "*Mt. Hawley* Sanction Order"). That misconduct included the blatant disregard for myriad discovery orders, numerous misrepresentations respecting the control and ownership of the company, and the permanent destruction of relevant information. By that point, it was too late to undo the damage that K and B had done, but the court was able to protect the victims of K's and B's misconduct by dismissing Felman Production's claim with prejudice. Such relief cannot help Pinchuk here, however. The only way for this Court to ensure that Pinchuk is able to obtain the evidence he needs is to deny the Motion to Vacate and compel the production of documents and the deposition of Mordechai Korf.

---

[2] They say nothing, of course, about whether they jointly have a majority ownership interest in the Discovery Subjects.

[3] The undersigned counsel also take issue with another surprising claim made by K and B in their recent Reply brief. *See* ECF 58 at 2. K and B have suggested that, when the undersigned filed Pinchuk's Response to the Motion to Vacate on January 6, 2014, they intentionally failed to inform the Court about K's and B's December 31, 2013 motion for clarification to the LCIA Tribunal. The fact is, however, that K and B never served the undersigned with their December 31, 2013 motion for clarification to the LCIA Tribunal (which they should have done knowing that Pinchuk was without counsel in the LCIA proceedings) and the undersigned did not know about the motion for clarification until K and B filed it with this Court, for the very first time, on January 15, 2014. *See* ECF 54.

## I. THE K AND B DECLARATIONS SUPPORT DENIAL OF THEIR MOTION TO INTERVENE.

The Court may recall that K and B argued that they need to intervene because the Discovery Subjects, including Mordechai Korf, have no way of informing the Court of the status of the LCIA proceedings or evaluating Pinchuk's discovery requests. *See* Motion to Intervene, ECF 10 at 10-11, 16. By making that claim, K & B were obviously suggesting that they have no relationship sufficient for them to communicate with the Discovery Subjects regarding this information. In his Response Brief, Pinchuk pointed to Judge Stanley's *Mt. Hawley* Order[4] to show that, not only do K & B have a relationship with the Discovery Subjects, including Mr. Korf, but they ***own and/or control*** them. *See* Pinchuk's Mem. in Opp. to the Motion to Intervene, ECF 24 at 6-7. In response, K and B did not deny that they own and control the Discovery Subjects. They skirted the issue by brushing Judge Stanley's evidentiary findings off as "purported facts," and claimed they were inapposite because they were made "several years ago." ECF 29 at 12.

Then, in the hopes of having the LCIA Tribunal order Pinchuk to suspend this case, K represented to the LCIA Tribunal that the Discovery Subjects' documents were "under his control" and that he could "ensure" their production. The implication, of course, was that K controlled the Discovery Subjects through some majority ownership interest. During the December 19, 2013 hearing before this Court, Your Honor specifically asked how K controls the documents and is able to ensure their production. Counsel for the Discovery Subjects responded that K and B "have not the sole, but the ***majority beneficial ownership*** of the Discovery Subjects. ***So and that means they are able to tell their - - you know, they are able to ensure compliance*** …." ECF 48-2, 12/19/13 Hrg. Tr. 124:3-6 (emphasis added).

Now, the story has changed again. Now, for the very first time, K claims that his "control" derives not from any actual control or ownership, but "from an agreement –

[4] *Mt. Hawley*, 269 F.R.D. 609.

initially verbal and later formalized in writing – reached prior to 16 December 2013 between Robert Powell, who is the General Counsel of GAA, on behalf of the Discovery Subjects, and my attorneys acting on my behalf in the LCIA Arbitration." Kolomoisky Decl. ¶ 13, ECF 50-3.

These conflicting representations confirm several things. First, as District Judge Robert Chambers observed in *Mt. Hawley*, K will say whatever is convenient at the moment, with no regard for whether his representations are true or false. *See Mt. Hawley* Sanction Order at 9 n.14. Second, based on the obvious conflicts in his statements (first disclaiming control, then claiming control, then acknowledging majority ownership, then disclaiming control or majority ownership), at least one of K's representations in this case has been untrue. Thus, K's and B's recent disclaimers of ownership or control, made solely to support their attempt to intervene, should be viewed with skepticism.[5]

Regardless of how the Court attempts to reconcile K's conflicting representations, one thing is clear: despite their initial suggestions to the contrary, K, B, and all of the Discovery Subjects, including Korf, share some sort of relationship, and the Discovery Subjects are owned, at least in part, by K and B. Thus, they will have no problem exchanging information sufficient to enable the Discovery Subjects to adequately represent K's and B's interests and, as companies that are owned by K and B, they are motivated to represent K and B's interests.

---

[5] K never explains how his control has changed from the control he had during the *Mt. Hawley* case. He merely states that the Discovery Subjects were reorganized in 2012 and that "the description of the corporate structure contained in that decision is no longer accurate." Kolomoisky Decl., ECF 50-3 ¶ 10. He does not say, specifically, how his ownership or control was affected by that reorganization, something that he should have explained in order to comply with the Court's December 23, 2013 Order.

## II. THE K AND B DECLARATIONS ALSO SUPPORT DENIAL OF THEIR MOTION TO VACATE.

With their recent declarations, K and B knocked the foundation out from under their Motion to Vacate. The Motion was founded exclusively on the LCIA Tribunal's ruling, and that ruling was founded exclusively on K's representations that the documents were "under his control" and that he could "ensure their production." Accepting K's latest declaration as true, his representations to the LCIA Tribunal ***could not have been true***. Having an unenforceable oral promise[6] by the Discovery Subjects to produce the documents is not "control" over the documents. It is not records custodian control. It is not ownership control. It is not manager control. It is not director control. In addition, it is apparent from the face of the written "agreement" there was no consideration given by K for the Discovery Subjects' "promise" to produce the documents, so the "agreement" is not legally enforceable.[7] Moreover, as at least minority owners of the Discovery Subjects (and likely more than just minority owners), K and B would never actually sue the Discovery Subjects to obtain the documents, so, even if legally enforceable, the "agreement" is meaningless in the practical sense. Moreover, the fact that the oral "agreement" was later committed to writing changes nothing. It merely allows the Court to read on paper that the "agreement" is illusory, and to confirm its speculation that K's representation to the LCIA Tribunal was similarly illusory.[8]

---

[6] Based on K's declaration, although he now has a written agreement, he had only an oral agreement from the Discovery Subjects at the time he made his representations to the LCIA Tribunal. *See* Kolomoisky Decl., ECF 50-3 ¶ 13.

[7] *See Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1311 (11th Cir. 1998) ("It is a fundamental principle of contract law that a promise is not enforceable unless it is supported by consideration.").

[8] The Court observed in its December 23, 2013 Order that "[i]f there is no meaningful relationship or connection between Kolomoisky and the documents, then the reassurance given to the LCIA may well be illusory." ECF 46 at 4. The Court's concern appears to have been well-founded.

Furthermore, because K's predicate promise of having "control" over the Discovery Subjects' documents was based only on an "agreement" by the Discovery Subjects, the LCIA Tribunal, which has no jurisdiction over the Discovery Subjects, has no way of knowing what documents actually exist and has no way of ensuring that the Discovery Subjects fully comply with their obligations to produce the documents. [9]

Finally, given the Discovery Subjects' and their leadership's history of extreme dishonesty and discovery misconduct, as highlighted in the *Mt. Hawley* case, including repeated violations of court orders, countless misrepresentations, and the permanent deletion of crucial information, this Court should be skeptical of any promises or agreements made by K and B or the Discovery Subjects, especially the empty promises and "agreements" purportedly reached in this case. The same is true respecting any representation that Korf will voluntarily appear to testify in the LCIA proceedings. The representations are simply unreliable.

For all of these reasons, the Court should deny the Motion to Vacate and enforce Pinchuk's subpoenas. All Pinchuk seeks is relevant evidence needed to support his claims against K and B. No harm will come from ordering the discovery. On the other hand, Pinchuk likely will suffer great harm if the discovery is not ordered because important evidence may be lost forever (Pinchuk already has reason to be concerned about spoliation in light of *Mt. Hawley* and the fact that some of the Discovery Subjects appear to have waited weeks before instituting litigation holds). Although the victims of K's and B's egregious misconduct in *Mt. Hawley* had an adequate remedy for the misconduct – the sanction of dismissal with prejudice – no similar relief exists to protect Pinchuk in this case. The sole

[9] The "agreement" also appears to be unenforceable because it does not even purport to give the LCIA jurisdiction over the Discovery Subjects to ensure compliance with the agreement. Moreover, because the Discovery Subjects are not actual parties to the LCIA proceedings, are not subject to the LCIA's jurisdiction, and have nothing to lose if they refuse to comply with the "agreement," the LCIA Tribunal has no real way of enforcing the "agreement" in any event.

purpose of this action is to obtain the evidence, and Pinchuk needs this Court's help – now – to ensure that he is able to obtain that evidence.

For all of the foregoing reasons, K's and B's recent declarations compel denial of both their Motion to Intervene and the Discovery Subjects' Motion to Vacate.

Respectfully submitted,

s/Ryan C. Zagare
Richard H. Critchlow (FL Bar No. 155227)
rcritchlow@knpa.com
Elizabeth B. Honkonen (FL Bar No. 0149403)
ehonkonen@knpa.com
Ryan Zagare (FL Bar No. 28700)
rzagare@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
*Counsel for Applicant Victor Mikhaylovich Pinchuk*

**CERTIFICATE OF SERVICE**

**I certify** that on January 23, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Ryan C. Zagare

**SERVICE LIST**

Jeffrey B. Crockett, Esq.
jcrockett@coffeyburlington.com
Armando Rosquete, Esq.
Arosquete@coffeyburlington.com
Benjamin Brodsky, Esq.
bbrodsky@coffeyburlington.com
COFFEY BURLINGTON, P.L.
2699 South Bayshore Drive, PH
Miami, Florida 33131
Telephone: (305) 858-2900
Facsimile: (305) 858-5261
*Counsel for Discovery Subjects*
**[VIA CM/ECF]**

Richard H. Critchlow (FL Bar No. 155227)
rcritchlow@knpa.com
Elizabeth B. Honkonen (FL Bar No. 0149403)
ehonkonen@knpa.com
Ryan Zagare (FL Bar No. 28700)
rzagare@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
*Counsel for Applicant Victor Mikhaylovich Pinchuk*
**[VIA CM/ECF]**

Jose I. Astigarraga, Esq.
jastigarraga@astidavis.com
Edward M. Mullins, Esq.
emullins@astidavis.com
Arnoldo B. Lacayo, Esq.
alacayo@astidavis.com
ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
*Counsel for Proposed Intervenors*
**[VIA CM/ECF]**